UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

HARRY MONTALVO MENDEZ, JR.

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY[1]

3:18-CV-00008 (RMS)

DATE: MARCH 1, 2019

---

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER AND ON THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

This action, filed under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeks review of a final decision by the Commissioner of Social Security ["SSA" or "the Commissioner"] denying the plaintiff's application for Supplemental Security Income ["SSI"] and Social Security Disability Insurance ["SSDI"] benefits.

I. ADMINISTRATIVE PROCEEDINGS

On or about April 14, 2014, the plaintiff filed an application for SSDI benefits claiming that he has been disabled since November 24, 2013, due to arthritis and a bulging disc in his neck, spondylosis, stenosis, a tumor above his spine, and muscle spasms. (Doc. No. 21 (Certified Transcript of Administrative Proceedings, dated February 12, 2018 ["Tr."]) 94–95, 105–06, 123, 129; *see* Tr. 202–03). The Commissioner denied the plaintiff's application initially and upon

---

[1] On January 21, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. The Federal Vacancies Reform Act limits the time a position can be filled by an acting official, 5 U.S.C. § 3349(b); accordingly, as of November 17, 2017, Nancy Berryhill is serving as the Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

reconsideration. (Tr. 94–104, 105–17; *see also* Tr. 122–26, 128–31). On February 12, 2015, the plaintiff requested a hearing before an Administrative Law Judge ["ALJ"] (Tr. 132–33), and filed an application for SSI benefits (Tr. 204–12). On June 23, 2016, a hearing was held before ALJ Alexander Peter Borre, at which the plaintiff and a vocational expert, James Cohen, Ph.D., testified. (Tr. 50–93; *see* Tr. 14–37, 162–90, 296–98). On September 15, 2016, the ALJ issued an unfavorable decision denying the plaintiff's claim for benefits. (Tr. 14–37). On November 17, 2016, the plaintiff requested review of the hearing decision (Tr. 197–201), and on November 9, 2017, the Appeals Council denied the plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

The plaintiff filed his complaint in this pending action on January 2, 2018. (Doc. No. 1). On March 28, 2018, the case was reassigned to United States District Judge Vanessa L. Bryant. (Doc. No. 15). On April 12, 2018, the parties consented to jurisdiction by a United States Magistrate Judge, and the defendant filed a corrected certified administrative transcript.[2] (Doc. Nos. 19–21). On April 13, 2018, the case was reassigned to Magistrate Judge Joan G. Margolis. (Doc. No. 24). The case was then transferred to this Magistrate Judge on May 1, 2018. (Doc. No. 26). On May 4, 2018, the plaintiff filed his Motion to Reverse the Decision of the Commissioner (Doc. No. 27), with brief in support (Doc. No. 27-1 [Pl.'s Mem.]), and a stipulation of facts (Doc. No. 27-2). On August 1, 2018, the defendant filed her Motion to Affirm the Decision of the Commissioner (Doc. No. 30), with brief in support. (Doc. No. 30-1 [Def.'s Mem.]).

---

[2] The defendant filed her initial answer and administrative transcript on March 5, 2018 (Doc. No. 11); however, the transcript contained records irrelevant to this case. Accordingly, on April 12, 2018, the defendant filed a consent Motion for Leave to File a Corrected Transcript (Doc. No. 20), which the Court granted on April 13, 2018. (Doc. No. 22).

For the reasons stated below, the plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. No. 27) is GRANTED, and the defendant's Motion to Affirm (Doc. No. 30) is DENIED.

## II.  FACTUAL BACKGROUND[3]

The Court presumes the parties' familiarity with the plaintiff's medical history, which is thoroughly discussed in the Joint Stipulation of Facts (Doc. No. 27-1). The Court cites only the portions of the record that are necessary to explain this decision.

## III.  THE ALJ'S DECISION

Following the five-step evaluation process,[4] the ALJ found that the plaintiff's date last insured was December 31, 2018, and that the plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 24, 2013, through his date last insured. (Tr. 20, citing 20 C.F.R. §§ 404.1571 *et seq.*, and 416.971, *et seq.*). The ALJ concluded that, as of the date last insured, the plaintiff had the following severe impairments: "cervical degenerative disc disease

---

[3] The Court adopts and incorporates by reference the Joint Stipulation of Facts (Doc. No. 27-1). Throughout this Ruling, commonly used medical terms do not appear in quotation marks although the terms are taken directly from the plaintiff's medical records.

[4] An ALJ determines disability using a five-step analysis. *See* 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is currently working. *See* 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a). If the claimant is currently employed, the claim is denied. *Id.* If the claimant is not working, as a second step, the ALJ must make a finding as to the existence of a severe mental or physical impairment; if none exists, the claim is also denied. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant is found to have a severe impairment, the third step is to compare the claimant's impairment with those in Appendix 1 of the Regulations [the "Listings"]. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *Balsamo v. Chater*, 142 F.3d 75, 79–80 (2d Cir. 1998). If the claimant's impairment meets or equals one of the impairments in the Listings, the claimant is automatically considered disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); *see also Balsamo*, 142 F.3d at 80. If the claimant's impairment does not meet or equal one of the listed impairments, as a fourth step, he will have to show that he cannot perform his former work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.1520(a)(4)(iv). If the claimant shows he cannot perform his former work, the burden shifts to the Commissioner to show that the claimant can perform other gainful work. *See Balsamo*, 142 F.3d at 80 (citations omitted). Accordingly, a claimant is entitled to receive disability benefits only if he shows he cannot perform his former employment, and the Commissioner fails to show that the claimant can perform alternate gainful employment. *See* 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v); *see also Balsamo*, 142 F.3d at 80 (citations omitted).

status post two cervical fusion surgeries and depression."[5] (Tr. 20, citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). At step three, the ALJ concluded that the plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21, citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). The ALJ found that the plaintiff had the residual functional capacity ["RFC"] to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he could never climb ladders, ropes, or scaffolds; could not tolerate exposure to hazards such as open, moving machinery; could occasionally climb ramps and stairs; could occasionally balance, stoop, kneel, crouch, crawl, and reach overhead bilaterally; could frequently finger and handle bilaterally; and was limited to simple and repetitive tasks. (Tr. 23). At step four, the ALJ concluded that the plaintiff was unable to perform any past relevant work. (Tr. 29, citing 20 C.F.R. §§ 404.1565 and 416.965). At step five, after considering the plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were significant numbers of jobs in the national economy that the plaintiff could perform. (Tr. 30, citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Accordingly, the ALJ concluded that the plaintiff was not under a disability, as defined in the Social Security Act, at any time from the alleged onset date of November 24, 2013, through the date of his decision.[6] (Tr. 31, citing 20 C.F.R. §§ 404.1520(g) and 416.920(g)).

---

[5] The ALJ noted also that "[t]he medical evidence includes a history of other medically determinable impairments: a mass of the right breast and obesity." (Tr. 20). The ALJ concluded that these impairments were non-severe, as neither "represents, either singly or in combination with everything else, more than a minimal limitation in the ability to perform basic work activities." (Tr. 20).

[6] A claimant's date last insured applies only to claims for SSDI, not SSI. *See McLellan v. Astrue*, No. 3:12-CV-1657 (DFM), 2016 WL 4126414, at *1 n.1 (D. Conn. Aug. 3, 2016); *Severino v. Astrue*, No. 3:07-CV-1347 (WIG), 2008 WL 3891956, at *1 (D. Conn. June 20, 2008), Magistrate Judge's Recommended Ruling approved and adopted, No. 3:07-CV-1347 (MRK) (D. Conn. July 11, 2008). Accordingly, reference to the plaintiff's date last insured of December 31, 2018 is applicable only to his claim for SSDI. The relevant time period for the plaintiff's claims for SSI is the date on which he filed his application for SSI through the date of the ALJ's decision; *see Stergue v. Astrue*,

IV. STANDARD OF REVIEW

The scope of review of a Social Security disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles in making the determination. *See Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Second, the court must decide whether substantial evidence supports the determination. *See id.* The court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (citation and internal quotations marks omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (citation omitted). The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. *See Gonzalez v. Apfel*, 23 F. Supp. 2d 179, 189 (D. Conn. 1998) (citation omitted); *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977) (citations omitted). However, the court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Dotson v. Shalala*, 1 F.3d 571, 577 (7th Cir. 1993) (citation omitted). Instead, the court must scrutinize the entire record to determine the reasonableness of the ALJ's factual findings. *See id.* Furthermore, the Commissioner's findings are conclusive if supported by substantial evidence and should be upheld even in those cases where the reviewing court might have found otherwise. *See* 42 U.S.C. § 405(g); *see also Beauvoir v.*

---

No. 3:13-CV-25 (DFM), 2014 WL 12825146, at *2 (D. Conn. May 30, 2014) (citing *Pratt v. Astrue*, No. 3:10-CV-413 (CFD), 2011 WL 322823, at *3 (D. Conn. Jan. 28, 2011)); which, for this case, is between February 12, 2015 and September 15, 2016. (*See* Tr. 204–12; Tr. 14–37).

*Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997) (citation omitted); *Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

V.     DISCUSSION

In this appeal, the plaintiff contends that the ALJ erred in two respects. First, the plaintiff argues that the ALJ failed to assess properly the plaintiff's complaints of pain and failed to consider adequately the medical and non-medical opinions concerning the effects of the plaintiff's pain. (Pl.'s Mem. at 2–12). Second, the plaintiff argues that the ALJ failed to apply properly the treating physician rule when weighing the opinions of the plaintiff's primary care physician, Dr. David DeLucia. (Pl.'s Mem. at 12–15). The defendant responds that the ALJ was correct in determining that the plaintiff's complaints of pain were not entirely credible and in affording little weight to Dr. DeLucia's opinion. (Def.'s Mem. at 4–10). The Court agrees with the plaintiff's first argument that remand is warranted because the ALJ failed to properly evaluate the plaintiff's pain and, therefore, will not address the plaintiff's second argument regarding the ALJ's application of the treating physician rule.

    A.    THE ALJ IMPROPERLY EVALUATED THE PLAINTIFF'S PAIN AND FAILED TO CONSIDER ALL OF THE EVIDENCE IN THE RECORD.

The plaintiff contends that "[t]he ALJ failed to properly evaluate the plaintiff's pain in accordance with the criteria of 20 C.F.R. § 404.1529 and § 404.1545(b), and failed to give proper consideration to all the opinions of medical and non-medical sources concerning the effects of the plaintiff's pain." (Pl.'s Mem. at 2). Throughout his brief, the plaintiff iterates that the applicable regulations require consideration of all the evidence in the record, not just the objective medical evidence, and that the ALJ erred by discrediting, *inter alia*, the plaintiff's subjective complaints of

pain, the letters written by the plaintiff's girlfriend and son[7] regarding his condition, the opinions of the plaintiff's physical therapists, and the opinions of a State agency consultant. (*See* Pl.'s Mem. at 5–6, 7–9). The plaintiff argues also that, even if his subjective complaints of pain were not "entirely consistent" with the evidence in the record, his complaints can, at least, "reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence" and, on that basis, the ALJ should have found differently. (Pl.'s Mem. at 9 (citing 20 C.F.R. § 404.1529(c)(3) and (c)(4)). The defendant responds that "the ALJ considered the plaintiff's allegations of pain[,] . . . weighed those allegations against the other objective medical evidence on record," and "appropriately found that the plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms [were] inconsistent with the medical records." (Def.'s Mem. at 6).

"An ALJ should compare subjective testimony regarding the frequency and severity of symptoms to objective medical evidence." *Pereira v. Astrue*, 279 F.R.D. 201, 208 (E.D.N.Y. 2010). "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques . . . ." 20 C.F.R. § 404.1529(c)(2). "[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted); *see Schultz v. Astrue*, No. 04-CV-1369 (NAM)(RFT), 2008 WL 728925, at *12 (N.D.N.Y. Mar. 18, 2008). "However, if a claimant's symptoms suggest a greater severity of impairment than can be demonstrated by the objective medical evidence, additional factors must be considered." *Pereira*, 279 F.R.D. at 208. Additional factors "include daily activities, the

---

[7] The plaintiff refers to the author of one of the letters as his son. (Pl.'s Mem at 7). Although the individual who authored the letter is not the plaintiff's biological child, the author indicated that he has known the plaintiff for more than twenty years and that he calls the plaintiff his father. (Tr. 301).

7

location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms." *Id.* "The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of pain alleged by the claimant." *Schultz*, 2008 WL 728928, at *12.

The Commissioner, however, "will not reject [a claimant's] statements about the intensity and persistence of [a claimant's] pain and other symptoms or the effect [a claimant's] symptoms have on [his or her] ability to work solely because the available objective medical evidence does not substantiate [a claimant's] statements." 20 C.F.R. § 404.1529(c)(2). "The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether [a] plaintiff's statements about the intensity, persistence, or functionally limiting effects of [his or her symptoms] are consistent with the objective medical and other evidence." *Schultz*, 2008 WL 728925, at *12 (citing Social Security Ruling 96–7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996)).

The ALJ concluded that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 24). The ALJ reasoned, *inter alia*, that, although conservative treatment did not improve the plaintiff's cervical degenerative disc disease, two cervical fusion surgeries did in that "treatment records following surgery revealed that the [plaintiff's] upper extremity pain significantly improved with this surgery." (Tr. 25). Specifically, the ALJ noted that "the record showed that the [plaintiff] experienced some occasional cervical pain with a partially limited range of motion and some

8

weakness of the bilateral upper extremities" (Tr. 25); the ALJ reiterated that "the medical evidence of record as a whole . . . showed that the [plaintiff] experienced occasional flareups of cervical back pain with movement and occasional bilateral hand weakness but also showed he generally had no difficulties walking, had a normal gait and stance, and had good-to-full strength of the bilateral upper extremities . . . ." (Tr. 26; *see* Tr. 25, 26, 28).

Additionally, the ALJ afforded "[l]ittle weight" to the letters that the plaintiff's girlfriend and son wrote in June 2016, in which they described the impact that the plaintiff's impairments had on his everyday life. (Tr. 27). The ALJ reasoned that the letters were "not consistent with the medical evidence of record," explaining again that the plaintiff experienced only "occasional flareups" of pain. (Tr. 28). The ALJ noted also that the opinions of the plaintiff's girlfriend and son were "not consistent with the claimant's documented ability to complete[] some activities of daily living, such as preparing simple meals and driving on occasion," and that, "although they have personally observed the claimant on a number of occasions, neither [the plaintiff's girlfriend] nor [the plaintiff's son] have any medical training. As such, their opinions are of limited value." (Tr. 28).

The Court concludes that the ALJ failed to evaluate properly the plaintiff's complaints of pain. Throughout the record, the plaintiff consistently complained of pain in his neck, arms, and shoulders, and the plaintiff's treatment providers consistently noted that, following a physical examination, the plaintiff experienced limited range of motion in his cervical spine and shoulders due to pain or discomfort. (*See, e.g.*, Tr. 317–18, 322–23, 351, 359, 363, 367, 372, 410–12, 425, 428, 489, 490–92, 506–10, 593, 599, 651, 667, 682). In February 2014, it was noted that "[f]unctionally the [plaintiff] demonstrates minimal ability to work even at a sedentary level without an increase in his symptoms," and that the plaintiff was "significantly limited in his

9

functional ability." (Tr. 363). Going back to at least 2014, the plaintiff's medical records show that his treatment providers regularly prescribed Vicodin or OxyContin and performed steroidal injections to treat the pain that the plaintiff experienced in his neck, arms, and shoulders. (*See* Tr. 398, 414, 425, 447–505, 506–28). An MRI taken in March 2014 showed that the plaintiff had disc herniation at the C5-6 level with "a disc osteophyte complex . . . causing neuroforaminal stenosis . . . ." (Tr. 323). In May 2014, following his first fusion surgery, Dr. Mitchell Garden noted that, although he was feeling better post-surgery, the plaintiff continued to experience pain and decreased range of motion in his bilateral upper extremities. (Tr. 651).

Additionally, in February 2015, the plaintiff's physical therapist noted that the plaintiff experienced, *inter alia*, "cervical spasms and tenderness," as well as pain in his back that decreased his range of motion. (Tr. 491). In April 2015, the plaintiff's physical therapist reported that the plaintiff experienced functional limitations with certain movements, such as sitting and lying on his side for more than five minutes, and performing household chores. (Tr. 593). When the plaintiff sought treatment at St. Mary's Behavioral Health in 2015 and 2016, his provider noted at nearly every appointment that the plaintiff had a "pained look on his face." (Tr. 670–77). In May 2016, the plaintiff's physical therapist noted that the plaintiff experienced "cervical spasms and tenderness" and that the range of motion in his back was "limited secondary to pain." (Tr. 508).

The plaintiff's primary care physician, Dr. David DeLucia, completed a medical source statement in June 2016, in which he noted the plaintiff's diagnoses of cervical disc disease and "[m]yofascial pain (shoulders, neck, arms)." (Tr. 719). Dr. DeLucia noted also that the plaintiff's symptoms included pain, numbness, and weakness in his right and left arm, neck pain, and limited range of motion in his left shoulder; under "clinical findings and objective signs," he recorded "weakness of hands (drops objects) / guarded, slow movement of neck[.] Limited [range of motion

in] shoulder." (Tr. 719). Dr. DeLucia characterized the plaintiff's pain as "[i]ntermittent pain of neck/shoulders/arms / [a]lmost always present, but will flare intermittently; precipitated by movement." (Tr. 719). He pointed out also that the plaintiff's "[p]ain/paresthesias, numbness" and/or "muscle weakness" would require him to take multiple breaks per day ranging from "0-15 min[utes]" during a normal workday (Tr. 720), and that his impairments would, on average, cause him to be absent from work "[m]ore than four days per month." (Tr. 722).

Moreover, Dr. Marcia Lipski, a State agency consultant, reviewed the plaintiff's records and opined that, as of August 2014, the plaintiff's condition "appeare[d] severe." (Tr. 98). She found that the plaintiff had the medical determinable impairment of "[s]pine [d]isorders" and that the impairment was "severe." (Tr. 98). She added that the plaintiff's spine disorders could "reasonably be expected to produce the [plaintiff's] pain or other symptoms," and that the plaintiff's "statements about the intensity, persistence, and functionally limiting effects of [his] symptoms [were] substantiated by the objective medical evidence alone." (Tr. 98). Dr. Lipski issued another report in January 2015, in which she concluded similarly that the plaintiff suffered from "[s]pinal [d]isorders" and that this impairment was "severe." (Tr. 111). Dr. Lipski added again that the plaintiff's spine disorders could "reasonably be expected to produce the [plaintiff's] pain or other symptoms" and that the plaintiff's "statements about the intensity, persistence, and functionally limiting effects of [his] symptoms [were] substantiated by the objective medical evidence alone." (Tr. 111). She included in her RFC determination that "[o]bjective findings, subjective statements, [and] treating source opinions [were] consistent." (Tr. 114).

Furthermore, throughout the plaintiff's medical records, he consistently reported that he experienced pain in his neck, arms, and shoulders, which he also consistently rated as anywhere from a five out of ten to a ten out of ten. (*See, e.g.*, Tr. 320–67, 372–95, 398–412, 432, 447–528).

11

Other evidence, in addition to the medical evidence, regarding the plaintiff's pain existed in the record as well. On "Activities of Daily Living" forms that the plaintiff completed in May and October 2014, he noted that he spent a portion of each day lying on his back to help with the pain and that his pain increased when he tried to do anything. (Tr. 251). He reported that his pain interrupted his sleep and prevented him from doing housework, and that he had difficulty eating, using the toilet, and grooming himself. (Tr. 252, 254, 277, 279). The plaintiff claimed also that he did not go anywhere or participate in social events because he experienced too much pain (Tr. 256, 281), and that he only drove when "extremely necessary" and for short distances because the pain would become too bothersome. (Tr. 254, 279). In the May 2014 form, the plaintiff indicated that his pain limited his ability to do the following: lift, bend, reach, walk, and use his hands. (Tr. 256). In the October 2014 form, the plaintiff noted the additional limitations in squatting, climbing stairs, talking, completing tasks, and concentrating. (Tr. 281).

Lastly, the plaintiff's girlfriend and son each submitted letters to the ALJ discussing their observations of the plaintiff's condition. (Tr. 300–02). The plaintiff's girlfriend described a once-happy person who worked hard and always wanted "to get things done," and who "would always have conversations with [her] pertaining to [their] future." (Tr. 300). She stated that now, however, the plaintiff "is not motivated to do anything or go anywhere," and that "his life changed drastically" because of his neck pain and resultant surgeries. (Tr. 300). She explained that the plaintiff could not tolerate "lifting, cleaning the yard, going to the grocery store," or "driving for a long period of time," and that "no matter what [they did] throughout the day[, the plaintiff] would always need[] to stop and rest." (Tr. 300). The plaintiff's son similarly described the plaintiff as a once "hardworking and responsible man" who "provided for [the son's] family and [the son] selflessly and graciously." (Tr. 301). He added that the plaintiff sometimes worked twelve or

more hours in a day and that the plaintiff was "a jack of all trades, which [the son and his family] definitely [could] not live without." (Tr. 301 (internal quotation marks omitted)). The son explained that he has since observed the plaintiff walking slower, being unable to pick up "relatively light items," having difficulty driving and walking up and down stairs, and being unable to maintain his property. (Tr. 301). The son added that the plaintiff "can rarely sleep; [and] he is fatigued often by benign daily tasks and is in constant pain." (Tr. 301).

It appears to the Court that the ALJ improperly evaluated—and misread—the evidence in the record when finding that the plaintiff's statements concerning his symptoms were not entirely consistent with the medical and other evidence because he experienced only "occasional flareups" of pain. (*See* Tr. 26). The evidence discussed in the preceding paragraphs reveals that, for several years, the plaintiff complained of constant pain in his neck, shoulders, and arms. The plaintiff consistently reported difficulties in his activities of daily living, and the letters from the plaintiff's girlfriend and son confirm many of the plaintiff's claimed limitations. Moreover, the objective medical evidence reveals that the plaintiff experienced physical limitations as a result of his pain. The record is replete with notations that the plaintiff's range of motion in his neck and shoulders was decreased because of pain, and that the plaintiff's "chronic persistent pain condition" warranted continued opiate therapy. (Tr. 400, 404, 408, 412, 492, 504). The evidence reveals also that the plaintiff's pain persisted despite his pursuing aggressive treatment options, namely, two cervical fusion surgeries. In addition, Dr. DeLucia and Dr. Lipski both opined that the plaintiff's statements about the limiting effects of his impairments were at least "reasonably consistent" with the objective medical evidence in the record.

In finding that the plaintiff's statements concerning his symptoms were not entirely consistent with the medical evidence and other evidence in the record, the ALJ reiterated that the

13

plaintiff experienced only "occasional flareups" of pain. Notably, however, no medical source ever opined that the plaintiff's pain ever subsided completely or that the plaintiff only occasionally experienced pain. Although the plaintiff's records reflect that he experienced some improvement in his condition with pain management and treatment, the records reflect also that he constantly complained of pain and that there were times when his pain would "flare up." (*See* Tr. 447–528). In other words, the plaintiff constantly experienced pain; however, on occasion, that constant pain would "flare up" and become worse.

The Court cannot allow the ALJ's decision to stand as it was based upon a misreading of the medical evidence in the record. *See Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010) (per curiam) (stating that when an ALJ's "adverse credibility finding, which was crucial to [the] rejection of [the plaintiff's claim], was based on a misreading of the evidence," the court will determine that the ALJ "did not comply with the [his] obligation to consider 'all of the relevant medical and other evidence . . . and [the adverse credibility finding] cannot stand." (citation omitted)). The record is replete with evidence to support and corroborate the plaintiff's subjective complaints of chronic pain. Furthermore, the ALJ erred in assigning "little weight" to the letters submitted by the plaintiff's girlfriend and son, individuals who had frequent contact with, and firsthand exposure to, the plaintiff. (*See* Tr. 27; *see also* Tr. 300–02). The letters are consistent with the plaintiff's subjective complaints, the limitations that the plaintiff described in his activities of daily living forms, (*see* Tr. 251–58; 276–83), and the objective medical evidence, which showed that the plaintiff suffered physical limitations due to pain. *See Dillon v. Colvin*, 210 F. Supp. 3d 1198, 1207 (D.S.D. 2016) (noting that "the regulations encourage the ALJ to seek the testimony of family members because they have the most frequent contact and exposure to the claimant's physical and mental impairments" (citing 20 C.F.R. §§ 404.1512(b)(1)(iii) and 404.1513(d)(4)).

14

Accordingly, the ALJ failed to properly evaluate the plaintiff's pain in accordance with 20 C.F.R. §§ 404.1529, 404.1545(b), 416.929, and 416.945(b), and remand is warranted.[8]

VI. <u>CONCLUSION</u>

For the reasons stated above, the plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. No. 27) is GRANTED, and the case is remanded to the Commissioner. On remand, the ALJ shall reconsider the evidence and evaluate the plaintiff's pain in accordance with 20 C.F.R. §§ 404.1529, 404.1545(b), 416.929, and 416.945(b), and issue a new decision. The defendant's Motion to Affirm (Doc. No. 30) is DENIED.

This is not a recommended ruling. The consent of the parties allows this Magistrate Judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). The Clerk's Office is instructed that, if any party appeals to this Court the decision made after this remand, any subsequent social security appeal is to be assigned to the Magistrate Judge who issued the Ruling that remanded the case.

Dated this 1st day of March, 2019 at New Haven, Connecticut.

/s/ Robert M. Spector, USMJ
Robert M. Spector
United States Magistrate Judge

---

[8] Because the Court remands on this basis, it need not consider the plaintiff's second argument that the ALJ failed to apply properly the treating physician rule.